UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALICE SOSA,

                           Plaintiff,

                                                        **MEMORANDUM & ORDER**
            - against -                                  18-CV-411 (PKC) (SJB)

NEW YORK CITY DEPARTMENT OF
EDUCATION and MARCY BERGER,

                           Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Alice Sosa brings this action against Defendants New York City Department of

Education ("NYC DOE") and Marcy Berger, alleging violations of 42 U.S.C. §§ 1981 and 1983

("Section 1981" and "Section 1983"), 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), 42 U.S.C. §§ 12101

*et seq*. ("American with Disabilities Act" or "ADA"), New York State Executive Law §§ 296 *et*

*seq*. ("New York State Human Rights Law" or "NYSHRL"), and the New York City

Administrative Code §§ 8-101 *et seq*. ("New York City Human Rights Law" or "NYCHRL").

Defendants seek to dismiss Plaintiff's retaliation claims, brought under all of these statutes.  For

the reasons stated herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

I.      **Facts**[1]

Plaintiff is a special education teacher at the Carl Ullman School, P4QPS213 ("P.S. 213")

in Queens, New York.  (Amended Complaint ("Am. Compl."), Dkt. 33, ¶¶ 5, 9.)  For the past eight

---

[1] The Court assumes the parties' familiarity with the relevant facts and procedural history
in this case and recites them here only to the extent necessary for the Court's analysis of Plaintiff's
remaining retaliation claims.  The facts recited in this section are based on the allegations in the
Amended Complaint, which the Court accepts as true for the purpose of Defendants' motion.  *See
Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

years, Plaintiff has consistently been assigned to Room 310 at P.S. 213. (*Id.* ¶ 12.) Plaintiff first sued Defendants in December 2014, when she brought an action alleging race, skin color, national origin, and disability discrimination claims pursuant to Sections 1981 and 1983, Title VII, the ADA, the NYSHRL, and the NYCHRL (the "2014 Action").[2] (*Id.* ¶¶ 94–95.) Plaintiff was on medical leave when she filed the action. (*See id.* ¶¶ 16–17, 94.) Plaintiff returned to work in April 2016 (*id.* ¶ 17), and in June 2016, requested that she be placed as a homeroom teacher in her former classroom, Room 310, at P.S. 213 (*id.* ¶ 64). Instead, Plaintiff was assigned to a different school as a "cluster" teacher.[3] (*Id.* ¶ 66.) Plaintiff alleges that there was "no legitimate business purpose" for the transfer and that Defendant Berger's actions were "purely discriminatory and [for the purpose of] harassment." (*Id.* ¶ 67.) Plaintiff declined this proposed assignment and raised the issue with her union by filing a grievance. (*Id.* ¶ 71.) Her grievance was sustained and she was assigned to her requested school and classroom. (*Id.*; *see also id.* ¶ 87 (noting that, for the 2017–2018 school year, Plaintiff was teaching at P.S. 213).) Also in 2016, Defendant NYC DOE filed a lawsuit against Plaintiff in state court to recover sums that were overpaid to Plaintiff during her medical leave. (*Id.* ¶ 90.) This lawsuit was voluntarily discontinued with prejudice. (*Id.* ¶ 93.)

On January 12, 2017, Plaintiff filed a complaint against Defendants with the New York City Commission on Human Rights (the "January 2017 CCHR Charge"). (*Id.* ¶ 101.) In that complaint, Plaintiff alleged that Defendants had violated her rights pursuant to the ADA, the

---

[2] That action was assigned to the Honorable LaShann DeArcy Hall under docket number 14-CV-7094.

[3] A cluster teacher "work[s] with numerous staff members as opposed to operating in a single classroom with a controlled environment for students designed by the teacher." (Am. Compl., Dkt. 33, ¶ 69.)

NYSHRL, and the NYCHRL. (*Id.* ¶ 101.)[4] A few weeks later, at a February 13, 2017 staff meeting, two new rules were announced: one rule stated that staff would not be allowed to use the bathroom during instructional breakfast and lunch periods, and the other stated that all classrooms must be kept locked. (*Id.* ¶¶ 43, 49.) These rules "uniquely and negatively" impacted Plaintiff because Plaintiff's medications resulted in her needing to urinate more frequently, and Plaintiff did not have a printer in her classroom, which meant that she often used printers in other classrooms to print out necessary materials for her students. (*Id.* ¶¶ 39–40, 49–50.) Plaintiff alleges that these new rules "were not enacted by Defendants out of any immediate pressing business necessity, but were enacted with the specific intent of interfering with Plaintiff's administration of her duties as a teacher, harassing and annoying Plaintiff." (*Id.* ¶ 51.)

Plaintiff took two sick days, on February 15 and 17, 2017. (*Id.* ¶ 54.) Plaintiff entered requests for coverage of her classroom into "the SubCentral System," but Defendant Berger removed these requests and then falsely accused Plaintiff of being "AWOL." (*Id.* ¶ 55.) Though Plaintiff provided evidence that she had, in fact, entered the requests from her home computer, Defendant Berger placed a letter in Plaintiff's file for professional misconduct. (*Id.* ¶ 56.) Defendant Berger again accused Plaintiff of professional misconduct on March 28, March 31, April 4, and April 20, 2017. (*Id.* ¶¶ 57–61.)[5] In July 2017, Defendant NYC DOE "inexplicably" caused Plaintiff's health insurance to lapse (*id.* ¶ 62), and in September 2017, it withheld one of

---

[4] Plaintiff also mentions that her submissions to the Commission "established that[] Defendants[] refused to observe[] Plaintiff's Title VII . . . rights in the workplace." (*Id.* ¶ 104.) However, the Court has reviewed the January 2017 CCHR Charge and notes that Plaintiff only asserted allegations relating to disability discrimination. (*See generally* January 2017 CCHR Charge, Dkt. 1-2.)

[5] Plaintiff does not specify whether any of these accusations resulted in additional letters being placed in her file.

her paychecks for a month without cause (*id.* ¶ 63).  Finally, for the 2017–2018 school year, Plaintiff requested but was initially denied a co-teacher and therefore needed to file a grievance with the union in order to have a co-teacher assigned to her classroom.  (*Id.* ¶ 87.)

## II.    Procedural History

Plaintiff filed her initial complaint in this matter on January 21, 2018.  (Dkt. 1.)  Defendants filed a motion to dismiss (Dkt. 18), which the Court referred to the Honorable Sanket J. Bulsara (June 12, 2018 Docket Order).  On January 22, 2019, Judge Bulsara issued a Report and Recommendation ("R&R") recommending that Plaintiff's complaint be dismissed in its entirety, but that Plaintiff should be permitted to file an amended complaint.  (Dkt. 30.)  On February 5, 2019, Plaintiff filed objections to Judge Bulsara's recommendation.  (Dkt. 31.)  On March 25, 2019, the Court, over Plaintiff's objections, adopted Judge Bulsara's R&R in full.  (Dkt. 32.)

On April 22, 2019, Plaintiff filed an Amended Complaint alleging discrimination, hostile work environment, and retaliation claims pursuant to Sections 1981 and 1983, Title VII, the ADA, the NYSHRL, and the NYCHRL.  (*See generally* Am. Compl., Dkt. 33.)  Defendants filed a motion for a pre-motion conference seeking permission to file a motion to dismiss Plaintiff's Amended Complaint in its entirety.  (Dkt. 34.)  The Court held a pre-motion conference on June 18, 2019.  At the conference, the Court dismissed Plaintiff's discrimination and hostile work environment claims.  (June 18, 2019 Minute Entry.)  The Court also ordered supplemental briefing on Plaintiff's retaliation claims.  (*Id.*)  Supplemental briefing was completed on July 16, 2019.  (Dkts. 37, 38.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

Thus, in employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint.") (brackets omitted) (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006)).

## DISCUSSION

To meet the burden for a retaliation claim on a motion to dismiss, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 516–17 (E.D.N.Y. 2019) (quoting *Littlejohn*, 795 F.3d at 315–16). This standard applies to claims brought pursuant to Title VII, Sections 1981 and 1983,[6] the ADA, and the NYSHRL.[7] *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (NYSHRL); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA); *Amaya v. Ballyshear LLC*, 295 F.

---

[6] Though Defendants argue that Plaintiff may not sue state actors pursuant to Section 1981 (Defs.' Letter Br., Dkt. 37, at 4), the Court notes that Plaintiff mentions both Sections 1981 and 1983 in her Amended Complaint (Am. Compl., Dkt. 33, ¶ 1) and therefore interprets her Amended Complaint to allege substantive violations of Section 1981 brought pursuant to Section 1983. *See Duplan v. City of New York*, 888 F.3d 612, 619–21 (2d Cir. 2018).

[7] Plaintiff also brings claims pursuant to the NYCHRL. (Am. Compl., Dkt. 33, ¶ 1.) "[C]laims under the NYCHRL are not analyzed under a framework identical to that applied for their federal claims." *Adams v. City of New York*, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011). Instead, "[c]laims under the NYCHRL must receive an 'independent liberal construction' that is not 'co-extensive' with federal counterparts." *Id.* (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Accordingly, the Court will consider Plaintiff's NYCHRL claims separately, as appropriate.

Supp. 3d 204, 226 (E.D.N.Y. 2018) ("As with discrimination claims, retaliation claims alleged under § 1981 are subject to the same analysis as those alleged under Title VII.") (collecting cases). At the pleading stage, a plaintiff "need not establish a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." *Kretzmon v. Erie County*, No. 11-CV-704 (RJA), 2013 WL 636545, at *4 (W.D.N.Y.2013) (internal quotation marks and citation omitted). In other words, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against [her], (2) 'because' [she] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "[A] 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (summary order) (quoting *Treglia*, 313 F.3d at 719).

## I.     The 2014 Action

Plaintiff first alleges that Defendants retaliated against her for filing the 2014 Action. (Am. Compl., Dkt. 33, ¶¶ 113, 118, 121, 123, 128, 134.) In that complaint, Plaintiff alleged race, skin color, national origin, and disability discrimination claims pursuant to Sections 1981 and 1983, Title VII, the ADA, the NYSHRL, and the NYCHRL against the same Defendants named in the instant action. (*Id.* ¶¶ 94–95.) Filing an employment discrimination lawsuit is a protected activity. *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). Defendants answered Plaintiff's 2014 Action on February 27, 2015, *see* Answer at 16, *Sosa v. N.Y.C. Dep't of Educ.*, 406 F. Supp. 3d 266 (E.D.N.Y. 2019) (No. 14-CV-7094), and do not contest that they were aware that Plaintiff filed the 2014 Action.

### A.     Exhaustion

Defendants first argue that Plaintiff has failed to exhaust her Title VII and ADA retaliation claims because she did not include these claims in her January 2017 CCHR Charge even though the incidents she alleges were retaliatory had already occurred by the time she filed the Charge. (Defendants' Letter Brief ("Defs.' Letter Br."), Dkt. 37, at 2–3.)  "It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).  The same is true for a plaintiff seeking remedies under the ADA.  *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (citing 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)).

"While plaintiffs are generally precluded from raising in a district court action claims not presented in the administrative complaint, there is an exception for claims which are 'reasonably related' to those raised in an administrative complaint."  *Burke v. Gutierrez*, No. 04-CV-7593 (PKC), 2006 WL 89936, at *11 (S.D.N.Y. Jan. 12, 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003)), *aff'd sub nom. Burke v. Evans*, 248 F. App'x 206 (2d Cir. 2007).  A retaliation claim is deemed reasonably related to an EEOC charge when it alleges retaliation for filing that EEOC charge.  *Duplan*, 888 F.3d at 622 ("[I]f a plaintiff has already filed an EEOC charge, we have been willing to assume that the exhaustion requirement is also met for a subsequent claim 'alleging retaliation by an employer against an employee for filing an EEOC charge.'") (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).   "These rationales however, are predicated upon the retaliation occurring *after* a charge is filed with the EEOC, and not before."  *Burke*, 2006 WL 89936, at *12.

Here, Plaintiff alleges that Defendants retaliated against her for filing the December 2014 action by denying her requested classroom assignment in June 2016. (*See* Am. Compl., Dkt. 33, ¶¶ 66–67, 114; *see also* Plaintiff's Letter Brief ("Pl.'s Letter Br."), Dkt. 38, at 3.) Since these acts occurred before Plaintiff filed her January 2017 CCHR Charge, they cannot be reasonably related to it. Plaintiff has therefore failed to exhaust these claims. However, "[c]laims brought under Sections 1983 and 1981 of Title 42 do not require exhaustion of administrative remedies before suing in federal court." *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178, 184 (E.D.N.Y. 2014). The Court will therefore look to see whether Plaintiff has sufficiently alleged retaliation under Sections 1981 and 1983 and the NYSHRL, which is analyzed under the same standard as a Title VII retaliation claim. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Sosa*, 368 F. Supp. 3d at 521.

### B.     Adverse Employment Action

Defendants argue that Plaintiff's allegations regarding the proposed transfer to a school and classroom position that she had not requested are insufficient to allege an adverse employment action. (Defs.' Letter Br., Dkt. 37, at 5.) "To support a retaliation claim, an adverse action must be 'likely to dissuade a reasonable worker in the plaintiff's position from exercising . . . legal rights.'" *Lawson v. Homenuk*, 710 F. App'x 460, 463 (2d Cir. 2017) (summary order) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)). This standard "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *Sosa*, 368 F. Supp. 3d at 517 (quoting *Vega*, 801 F.3d at 90). Though "[c]ourts in the Second Circuit have taken a generous view of adverse employment actions supporting retaliation claims at the motion to dismiss stage," "[t]his generous standard does not mean . . . that all allegations of retaliatory acts will survive a motion to dismiss." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp.

3d 158, 177 (E.D.N.Y. 2017). "[A] lateral job transfer that does not affect an employee's salary or title may be the basis for a Title VII retaliation claim only if the reassignment would have been viewed by a reasonable employee as being materially adverse." *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 384 (S.D.N.Y. 2014) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 555 (2d Cir. 2010)). "[M]aterial adversity is to be determined objectively, based on the reactions of a reasonable employee." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014).

Plaintiff alleges that she was initially denied both her requested school placement and position and instead assigned to a different school site as a "cluster," rather than homeroom teacher. (*See* Am. Compl., Dkt. 33, ¶¶ 64, 66.) She also alleges that "[a]ssignment as a cluster teacher could be characterized as a demotion" because cluster teachers "can be required to teach more than 6 classes a day," "are required to push and pull materials from site to site," and "work with numerous staff members as opposed to operating in a single classroom with a controlled environment . . . designed by the teacher." (*Id.* ¶ 69.) Plaintiff does not suggest that the new placement would have reduced her salary or title. Plaintiff was eventually assigned both her preferred school and teaching position, but only after she filed a grievance with her union. (*See id.* ¶ 71.)

This proposed transfer is not enough to constitute an adverse employment action. First, the transfer never actually occurred. The Second Circuit has held that "less significant employment actions taken by an employer," *i.e.*, those actions other than termination, "do not constitute adverse employment actions where they have been rescinded." *Shultz v. Congregation Shearith Israel of N.Y.*, 867 F.3d 298, 307 (2d Cir. 2017). Moreover, Plaintiff's description of the differences between a homeroom and cluster teacher position do not suggest that the two positions

differ materially as to their "prestige, modernity, training opportunity, job security, or some other objective indicator of desirability," *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 226 (E.D.N.Y. 2014) (internal quotation marks and citation omitted), so that a reasonable employee in Plaintiff's position would find the cluster teacher position to be materially adverse. Rather, the differences between the two positions are the types of "inconvenience[s] such as an increased commute or unfavorable hours" that are insufficient to "amount to adverse employment actions, even in the context of a retaliation claim." *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582 (JG), 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012) (internal quotation marks and citations omitted); *see also Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 486 (S.D.N.Y. 2017) (finding that a teacher's transfer from a high school to an elementary school was not an adverse employment action because there was "no other evidence that [the plaintiff's] job responsibilities were diminished, that teaching at the elementary school was less prestigious than teaching at the [high school], that her transfer was tantamount to a demotion, or that there was any other meaningful difference between her jobs at the two schools"); *see also id.* ("That [the p]laintiff was inconvenienced by the transfer, or that she would have preferred to stay on at [her old school], are insufficient to render her transfer adverse because the standard is an objective one.") (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006)).

Finally, Plaintiff notes that the cluster teacher position "would have specific negative and deleterious effect[s] on [Plaintiff's] health and livelihood" given her disability. (Am. Compl., Dkt. Dkt. 33, ¶ 70.) Though "material adversity is to be determined objectively," *Rivera*, 743 F.3d at 25, "context matters, as some actions may take on more or less significance depending on the context," *id.* (internal quotation marks and citation omitted). For example, an "assignment to a classroom on the fifth floor which aggravated [a] teacher's physical disabilities" can constitute an

adverse employment action. *Taylor*, 2012 WL 5989874, at *9 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006)). However, here, though Plaintiff alleges that there would be "negative and deleterious effect[s]" if she was assigned to a cluster teacher position (Am. Compl., Dkt. 33, ¶ 70), she does not provide any specific information as to what those effects would be. This pleading deficiency bars her retaliation claim. *See Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16-CV-4897 (AT) (JCF), 2017 WL 2258374, at *11 (S.D.N.Y. May 22, 2017) (finding that a denial of a transfer was not an adverse employment action when the plaintiff "fail[ed] to provide any information about how the denial of the transfer actually affected her, such that it might dissuade a reasonable employee in her shoes from reporting discrimination or harassment"), *report and recommendation adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB) (ETB), 2012 WL 1077677, at *16 (E.D.N.Y. Mar. 30, 2012) (holding that the plaintiff's job transfer was not an adverse action because the plaintiff did not indicate how her new position would fail to advance her career and instead "merely state[d] that it was a 'step down'"). Furthermore, the fact that Defendants granted Plaintiff's request for a disability accommodation relating to her schedule (*see* Am. Compl., Dkt. 33, ¶¶ 78–79) suggests that Plaintiff would have been entitled to the same accommodations as a cluster teacher which would have addressed the aspects of the position most likely to aggravate Plaintiff's disability (*see id.* ¶ 80 (noting that Plaintiff specifically sought a schedule accommodation so that she would never have to teach three classes in a row "because of the functional limitations from her disabilities")). Therefore, even taking Plaintiff's specific disabilities into account, Plaintiff has failed to show how the proposed assignment as a cluster teacher would be materially adverse to a reasonable employee in Plaintiff's position.

Accordingly, Plaintiff has failed to show that the proposed transfer constitutes an adverse employment action even under the more lenient retaliation standard.

## C. Causation

Furthermore, even assuming *arguendo*, that the proposed transfer constitutes an adverse employment action, Plaintiff's retaliation claim still fails because she has not sufficiently alleged "a causal connection between the protected activity and the adverse employment action." *Sosa*, 368 F. Supp. 3d at 516–17 (internal quotation marks and citation omitted). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90. "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases)). Here, Plaintiff filed the 2014 Action in December 2014, but alleges that the retaliatory behavior began in June 2016, almost two years later. (*See* Am. Compl., Dkt. 33, ¶¶ 64, 94.) "Motions to dismiss have been granted when the temporal proximity exceeds one year." *Sosa*, 368 F. Supp. 3d at 519 (citing *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order); *Shaw v. McDonald*, 715 F. App'x 60, 62 (2d Cir. 2018) (summary order)).

However, "[w]here there are longer gaps in time between protected activity and adverse employment action, the inference of causation may be inferred from the fact that the employer was waiting for the opportune time to retaliate." *White v. City of Middletown*, 45 F. Supp. 3d 195, 219 (D. Conn. 2014) (citations omitted); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding temporal causation after six months because "it is plausible that the officers waited to

exact their retaliation at an opportune time").[8]  For example, in *Geras v. Hempstead Union Free School District*, the Honorable Arthur D. Spatt found the "[p]laintiff's contention to be plausible that the [defendant school] Board waited to exact its retaliation against him at an opportune time, namely, a regularly-scheduled Board meeting at which his recommendation for tenure was presented for a vote" because it was possible to "conclude that the Board did so in order to have a ready explanation in the event that its actions were called into question in, for example, a federal discrimination lawsuit."  149 F. Supp. 3d 300, 332 (E.D.N.Y. 2015) (internal quotation marks omitted).  Likewise, in *White v. City of Middletown*, the Honorable Charles S. Haight Jr. found that the plaintiff had alleged a *prime facie* causal connection despite the fact that the defendant's retaliatory actions came seven months after the plaintiff had engaged in protected activity.  45 F. Supp. 3d at 219.  In making that determination, Judge Haight relied on the fact that plaintiff had only been back at work for a month, after an extended medical leave of absence, before the retaliation began and that the defendant's pattern of filing retaliatory complaints against the plaintiff first required the "[p]laintiff to commit[] a transgression" so that defendant could not have begun retaliating immediately upon plaintiff's return to work.  *Id.* !

Here, in contrast, Plaintiff provides no explanation for the lag in time between her return to work and Defendants' retaliation.  She alleges that "[i]n April of 2016, [she] returned to work after an extended medical leave."[9]  (Am. Compl., Dkt. 33, ¶ 17.)  However, she provides no

---

[8] In fact, in ruling on Defendants' first motion to dismiss in this case, the Court noted that "courts have found adequate allegations of temporal causation when the retaliatory actions began 'at the first actual opportunity to retaliate.'"  *Sosa*, 368 F. Supp. 3d at 498 n.7 (quoting *Summa*, 708 F.3d at 128).

[9] These allegations differ slightly from the allegations she made in her original complaint, in which Plaintiff stated that she began contacting school administrators in April 2016 and physically returned to work in the Fall of 2016.  (*See* Complaint, Dkt. 1, ¶¶ 37–48.)  However, "it is well established that an amended complaint ordinarily super[s]edes the original, and renders it of no legal effect."  *Baja Food Servs. S. De RL De DV v. Peanut Butter & Co.*, No. 14-CV-5290

14

allegations as to what happened between April 2016, when she returned to work, and June 2016 when she alleges that Defendants began their retaliatory activity. Nor does she provide any allegations to support an inference that Defendants needed to wait until June to retaliate against her, or that waiting to retaliate would provide cover for their actions. The lack of these allegations is particularly glaring given her allegations, discussed *infra*, regarding Defendants' retaliation against her within weeks of her filing her CCHR Charge in early 2017. Therefore, as a matter of law, Plaintiff cannot show that there is a causal connection between the filing of the 2014 Action and the proposed transfer in June 2016.

*    *    *

Accordingly, Plaintiff has failed to sufficiently allege that Defendants retaliated against her for filing her 2014 Action.[10]

## II.    January 2017 CCHR Charge

Plaintiff also alleges that she was retaliated against for filing her January 2017 CCHR Charge. (*See* Am. Compl., Dkt. 33, ¶¶ 101, 114.) Filing an administrative complaint alleging employment discrimination is protected activity. *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). Defendants do not contest that they were aware that Plaintiff filed

---

(LGS), 2015 WL 1137486, at *3 (S.D.N.Y. Mar. 13, 2015) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998)). Accordingly, the Court relies only on Plaintiff's Amended Complaint in conducting its analysis.

[10] "[U]nlike Title VII[, Sections 1981 and 1983,] and the NYSHRL, retaliation claims under the NYCHRL do not require the plaintiff to prove any materially adverse employment action. Instead, plaintiffs must prove that something happened that would be reasonably likely to deter a person from engaging in a protected activity." *Adams*, 837 F. Supp. 2d at 127. However, the NYCHRL still requires Plaintiff to show a "causal connection" between Defendants' action and Plaintiff's protected activity. *Id.* Therefore, even if the proposed transfer "would be reasonably likely to deter [Plaintiff] from engaging in a protected activity," *id.*, Plaintiff has still failed to allege that the Defendants had a retaliatory motive in proposing the transfer because it occurred more than a year after Plaintiff filed the 2014 Action.

this Charge in January 2017. *See Bowen-Hooks*, 13 F. Supp. 3d at 223 (finding Plaintiff had sufficiently alleged that Defendants knew of her protected activity because the EEOC informs employers when a charge against them is filed and the defendants "have not asserted otherwise").¹

### A.    Exhaustion

Defendants argue that Plaintiff's retaliation claim is not exhausted because the events that support the claim occurred before she filed the charge but were not included in the January 2017 CCHR Charge. (*See* Defs.' Letter Br., Dkt. 37, at 3.) Here, however, Plaintiff alleges that Plaintiffs retaliated *after* she filed her January 2017 EEOC charge. (*See* Pl.'s Letter Br., Dkt. 38, at 4 (arguing Defendants began retaliating against Plaintiff a few weeks after she filed the January 2017 CCHR Charge).) As discussed in more detail *supra*, "[c]laims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are reasonably related' to the claim filed with the agency." *Vives v. N.Y.C. Dep't of Corr.*, No. 15-CV-6127 (MKB), 2019 WL 1386738, at *7 (E.D.N.Y. Mar. 27, 2019) (quoting *Littlejohn*, 795 F.3d at 322). "'Reasonably related' claims are recognized . . . [where] the claim is one of 'retaliation by an employer against an employee for filing an EEOC charge' . . . ." *Id.* (quoting *Terry*, 336 F.3d at 151). Accordingly, the Court finds that Plaintiff has exhausted her retaliation claim. However, the Court notes that Plaintiff's January 2017 CCHR Charge focused exclusively on allegations of disability discrimination. (*See generally* January 2017 CCHR Charge, Dkt. 1-2.) Plaintiff's retaliation claim is therefore only exhausted pursuant to the statutes that protect against disability discrimination, *e.g.*, the ADA, the NYSHRL, and NYCHRL. *See Gomez*, 191 F. Supp. 3d at 300 (finding that plaintiff had not exhausted her Title VII claims because "[a]t no point does the [EEOC Charge] document reference, even in passing, sexual harassment or any other discrimination on the basis of race, gender, or any other group protected by Title VII").¹

### B.      Adverse Employment Action

As described *supra*, "[t]o support a retaliation claim, an adverse action must be 'likely to dissuade a reasonable worker in the plaintiff's position from exercising . . . legal rights.'" *Lawson*, 710 F. App'x at 463 (quoting *Millea*, 658 F.3d at 164).  Plaintiff alleges that after filing her January 2017 CCHR Charge, Defendants began retaliating against her by: implementing rules regarding bathroom and classroom access that negatively and uniquely affected Plaintiff; placing a disciplinary letter in Plaintiff's file accusing her of being absent from work without permission; and accusing Plaintiff of professional misconduct on several occasions.  (Pl.'s Letter Br., Dkt. 38, at 4–5; *see also* Am. Compl., Dkt. 33, ¶¶ 39–61.)

> A formal reprimand can be an adverse action for purposes of a retaliation claim, "even when . . . the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently," because "it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy."

*Bowen-Hooks*, 13 F. Supp. 3d at 227 (additional citation omitted) (quoting *Millea*, 658 F.3d at 165).  Plaintiff's allegation that Defendant Berger "placed a letter in Plaintiff's file for unprofessional misconduct falsely claiming that Plaintiff was AWOL" after Plaintiff took two sick days in mid-February (Am. Compl., Dkt. 33, ¶¶ 54–56) is sufficient to support Plaintiff's retaliation claim.  *See DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15-CV-6218 (PKC), 2017 WL 1034787, at *10 (E.D.N.Y. Mar. 16, 2017) ("Plaintiff has listed several adverse actions that [d]efendant took against him, including . . . retaliatory write-ups for infractions that had not happened . . . ."); *Perrin v. Conn. Dep't of Corr.*, No. 16-CV-643 (JAM), 2016 WL 6594070, at *2 (D. Conn. Nov. 7, 2016) ("[I]f it is true that plaintiff's supervisors decided for retaliatory reasons to initiate disciplinary proceedings against plaintiff on grounds they knew to be

false, [the court] cannot help but conclude that this tactic would . . . dissuade any reasonable employee from complaining about discrimination."). !

Furthermore, "[i]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (quoting *Hicks*, 593 F.3d at 165). Here, in addition to the disciplinary letter, Plaintiff alleges that Defendants changed school rules to specifically target her disability and make it harder for her to do her job, as well as continued to falsely accuse her of misconduct. "Although some of the conditions she complains of, considered individually, might reasonably be tolerated by many teachers, the allegation of their combination, alleged to have been imposed only on her, suffices to survive a motion to dismiss." *Massaro v. Bd. of Educ. of City Sch. Dist. of New York*, 774 F. App'x 18, 22 (2d Cir. 2019) (summary order); *id.* (noting that allegations of overcrowded classes with a disproportionate number of students with severe behavioral problems, assignments to classrooms with no temperature controls, a classroom schedule that left no time to prepare for classes or use the bathroom, and disciplinary action that was wrongly attributed to plaintiff, in the aggregate, was sufficient to establish a retaliation claim); *Vega*, 801 F.3d at 91 (finding that plaintiff had sufficiently alleged a retaliation claim based on "his assignment of notoriously absent students, his temporary paycheck reduction, and the District's failure to notify him of a curriculum change" because these actions could make it harder for plaintiff "to achieve good results" with his students or make "him appear unprepared or ineffective both to his students and for his up-coming teacher evaluation").

Plaintiff has therefore sufficiently alleged that she suffered an adverse employment action.

C.      Causation

Plaintiff has also sufficiently alleged that the adverse employment actions were caused by her protected activity given the temporal proximity between the two events.  As noted *supra*, "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  *Vega*, 801 F.3d at 90.  Plaintiff filed her CCHR Charge on January 12, 2017 (Am. Compl., Dkt. 33, ¶ 101; *see also* January 2017 CCHR Charge, Dkt. 1-2, at 3) and alleges that Defendants' began retaliating in mid-February by placing the disciplinary letter in her file after she took sick days on February 15 and 17 as well as changing the rules relating to bathroom and classroom access at a February 13th staff meeting (Am. Compl., Dkt. 33, ¶¶ 43, 49, 54, 56).  This temporal proximity is sufficient to support an inference that Defendants acted with a retaliatory purpose.  *See De Figueroa*, 403 F. Supp. 3d at 157 ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."); *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (noting that though "[t]he Second Circuit has not established a bright line to define the outer limits beyond which a temporal relationship is too attenuated[,] . . . the passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line") (internal quotation marks and citations omitted), *appeal dismissed* June 13, 2018.

*      *      *

Accordingly, Plaintiff has sufficiently alleged her retaliation claim pursuant to the ADA and NYSHRL based on the actions Defendants took after she filed her January 2017 CCHR

Charge.[11]  Furthermore, given that the standard for a NYCHRL claim is "more lenient," *Adams*, 837 F. Supp. 2d at 127, "claims that satisf[y] federal and state standards will necessarily satisfy the less exacting NYCHRL standards," *Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 451–52 (E.D.N.Y. 2014) (citing *Adams*, 837 F. Supp. 2d at 127).  Plaintiff's retaliation claims, pursuant to the ADA, NYSHRL, and the NYCHRL, based on her filing of the January 2017 CCHR Charge, will therefore proceed to discovery.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss as to Plaintiff's retaliation claims is granted in part and denied in part.  In light of the Court's dismissal of Plaintiff's discrimination and hostile work environment claims at the June 18, 2019 pre-motion conference and the dismissal of Plaintiff's retaliation claims pursuant to Title VII, Sections 1981 and 1983 herein, the only claims that will proceed to discovery are Plaintiff's ADA, NYSHRL, and NYCHRL retaliation claims based on adverse employment actions committed by Defendants after Plaintiff filed her January 2017 CCHR Charge.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
          Brooklyn, New York

---

[11] The standard for retaliation claims under the ADA and the NYSHRL is the same.  *See Treglia*, 313 F.3d at 719.