UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALICE SOSA,

                Plaintiff,

       - against -                    **MEMORANDUM & ORDER**
                                                        18-CV-411 (PKC) (MMH)

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and MARCY BERGER, in her
official and individual capacities,

                Defendants.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Alice Sosa, a special education teacher in the New York City school system, proceeding *pro se*,[1] filed this lawsuit alleging that the NYC Department of Education ("NYC DOE") and the principal of her school discriminated and, later, retaliated against her based on her race and disability, in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and the Americans with Disabilities Act ("ADA").[2] (First Amended Complaint ("FAC"), Dkt. 33 ¶¶ 112–134.) After multiple motions to dismiss, Plaintiff's only surviving claims are retaliation claims pursuant to the ADA, NYSHRL, and NYCHRL, stemming from events that took place after she filed a charge with the New York City Commission on Human Rights ("CCHR") in January 2017. (*See* M&O on Mot. to Dismiss Am. Compl., Dkt. 41; *see also* Dkt. 32 (adopting R&R on initial Motion to Dismiss.).)

---

[1] Plaintiff was previously represented by an attorney who withdrew for personal reasons. (*See* 8/10/20 Order (granting Plaintiff's attorney's motion to withdraw).)

[2] In 2014, Plaintiff brought another, similar suit against the NYC DOE, alleging other civil rights violations. *See Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019). Judge DeArcy Hall dismissed that case with prejudice in 2019. *Id.* at 270.

Defendants now move for summary judgment on the remaining claims. (Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs. Mot."), Dkt. 94.)[3] Though Ms. Sosa is not a lawyer, she has thoughtfully and determinedly presented her case.[4] Unfortunately, she has not presented evidence sufficient to raise a genuine question of material fact so as to survive summary judgment. For the reasons discussed below, the Court grants Defendants' motion in its entirety and terminates this case.

## FACTUAL BACKGROUND

Ms. Sosa's claims stem from her allegations that Defendants retaliated against her after she filed her CCHR complaint against NYC DOE in January 2017. (Defs.' Rule 56.1 Statement ("Defs. 56.1"), Dkt. 93 ¶ 7.)[5]

---

[3] The Court held oral argument on Defendants' Motion on April 15, 2024. (*See* 4/15/2024 Minute Entry.) There, Ms. Sosa ably presented her arguments. In some instances, Ms. Sosa fine-tuned her previous arguments. In other instances, she presented new allegations not previously made. At this late stage of the case, however, the Court is unable to accept new assertions of fact without evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Consequently, none of the new factual allegations Ms. Sosa made at oral argument can be considered in deciding Defendants' motion. In any event, even if the Court credited those unsupported allegations, they would be insufficient to defeat summary judgment in this case.

[4] On April 19, 2024, Ms. Sosa filed a letter with the Court requesting that the Court hold a second oral argument on this Motion so that she may "provide additional clarification." (Pl. Letter, Dkt. 95.) She does not specify in her letter what exactly she seeks to clarify. Because the Court has all of the information it needs to decide the Motion and the one-and-a-half-hour oral argument already held on the Motion, the Court denies Ms. Sosa's request for a second oral argument. *Cf.* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 6.1(c) (providing that, even in the first instance, district courts are not required to hold oral argument on motions).

[5] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document. The Court construes any disputed facts in the light most favorable to Plaintiff for purposes of Defendants' summary judgment motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendants' Local Rule 56.1

On February 13, 2017, a few weeks after Ms. Sosa filed that charge, PS213 held a staff meeting. (*Id*.) At that meeting, Ms. Sosa alleges that Defendants implemented new rules prohibiting staff from using the bathroom during instructional breakfast and lunch periods. (Pl.'s "Rebuttal" ("Pl. Opp."), Dkt. 89, at ECF 5[6]; Pl.'s Dep., Dkt. 92-1 at 35:7-36:17.) Defendants, however, dispute whether there was any change in the bathroom policy at all. (Defs. Mot., Dkt. 94 at 5.)

Later that week, Ms. Sosa was absent from school for two days—February 16 and 17, 2017. (Defs. 56.1, Dkt. 93 ¶ 25). Defendants assert that Ms. Sosa failed to log the second absence in the appropriate NYC DOE system. (2/28/2017 Disciplinary Letter, Dkt. 92-15.) As a result, NYC DOE placed a disciplinary letter in Ms. Sosa's file. (*Id*.) In addition to that disciplinary letter, two additional letters were placed in her file in the spring of 2017 (dated March 15 and April 21, respectively). (Pl.'s Exhs., Dkt. 89-1 at ECF 8–13.) In the March 15, 2017 letter, Ms. Sosa is reprimanded for her "frequent and lengthy interruptions" during the February 13, 2017 staff meeting. (*Id.* at ECF 13.). The April 21, 2017 letter (authored by Defendant Berger) discusses two separate alleged instances of misconduct: one on March 31, and one on April 4. According to Defendant Berger, three separate teachers complained to her about Ms. Sosa "loud[ly]" "command[ing]" another teacher to watch her class while she used the bathroom on March 31. (*Id*. at ECF 8.) And on April 4, Defendant Berger wrote that a staff member was injured by one of Ms. Sosa's students, who was running in the hall. (*Id.*) This letter concludes by stating that

---

Statement, the Court may deem any such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

future incidents of misconduct of this type may lead to further disciplinary action including termination. (*Id.*)

In addition, Ms. Sosa asserts that for both the 2016–2017 and 2017–2018 school years, she was denied an accommodation: specifically, Ms. Sosa sought an accommodation not to have to teach three class periods in a row on any day. (*Id*. at ECF 24.) This accommodation was granted for four days of the week, but Ms. Sosa was required to teach three periods in a row one day per week. (*Id.* at ECF 26.) Ms. Sosa also says that she was denied a co-teacher—a benefit provided to all other PS213 teachers—for the 2017–2018 school year. (*Id*. at ECF 30–32.) After Ms. Sosa involved her union representative, she was ultimately provided with a co-teacher for the remainder of the school year. (Defs. 56.1, Dkt. 93 ¶ 41.) Ms. Sosa continues to be employed with NYC DOE as a teacher. (*Id.* ¶ 49.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the parties' submissions, taken together, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248 (1986)). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact[.]" *State of N.Y. v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). Once

this burden is met, the burden shifts to the nonmoving party to proffer evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013).

When a *pro se* litigant is involved, "the same standards for summary judgment apply, but 'the pro se litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)). In addition, courts must liberally construe the pro se party's pleadings "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted) (*quoting McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

### I. Plaintiff's NYSHRL and ADA Retaliation Claims

#### A. Legal Standard

The same substantive standard applies to retaliation claims brought under the NYSHRL and the ADA. *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). For both claims, courts apply the *McDonnell Douglas* burden shifting framework. *Id.* Under the *McDonnell Douglas* framework, a plaintiff must first establish the *prima facie* case of retaliation. *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013). The elements of a *prima facie* retaliation case under both of these statutes "are: '(i) a plaintiff was engaged in protected activity; (ii) the

5

alleged retaliator knew that plaintiff was involved in protected activity;[7] (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Tafolla*, 80 F.4th at 125 (quoting *Natofsky v. City of N.Y.*, 921 F.3d 337, 353 (2d Cir. 2019)).

"[A]n adverse action" is an action that is "'likely to dissuade a reasonable worker in the plaintiff's position from exercising . . . legal rights.'" *Lawson v. Homenuk*, 710 F. App'x 460, 463 (2d Cir. 2017) (summary order) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)). This standard "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 516–17 (E.D.N.Y. 2019) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)). In addition, this standard requires "but for" causation, which can be demonstrated by indirect evidence "showing that the protected activity was followed closely by discriminatory treatment." *Id.* (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Once the plaintiff has established the *prima facie* case, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Andalex,* 737 F.3d at 845. Then, the burden shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To do so, "[t]he plaintiff must 'produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more

---

[7] There is no question that the first two elements of a retaliation claim are met. The parties' argument, therefore, focuses on the remaining two elements. (*See generally* Dkts. 89 & 94.)

likely than not [discrimination] was the real reason for the [employment action].'" *Id.* (alterations original) (quoting *Van Kant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996)).

**B.     Analysis**

Ms. Sosa argues that she has experienced four retaliatory adverse employment actions: (1) the placement of disciplinary letters in her file; (2) the partial denial of her accommodation request not to teach three consecutive classes in a day); (3) the delay in receiving a co-teacher for the 2017–2018 school year; and (4) the change in the bathroom policy. Viewing the evidence in the light most favorable to Ms. Sosa, the only adverse action taken against her was the change in bathroom policy; the other alleged actions do not rise to the level of adverse actions. However, Defendants have proffered a legitimate non-discriminatory motive for the change in bathroom policy—student safety—which Ms. Sosa has not offered sufficient evidence to rebut. The Court accordingly grants summary judgment in Defendants' favor on the ADA and NYSHRL retaliation claims.

First, the disciplinary letters. As an initial matter, Ms. Sosa protests the manner of delivery for the disciplinary letters. (Pl. Opp., Dkt. 89 at ECF 2.) According to Ms. Sosa, the letters were hand delivered during her instructional time, while she was sitting at her desk. (*Id.*) Though Ms. Sosa alleges that this manner of delivery caused her significant humiliation in front of her students and co-workers, (*id.;* Pl.'s Exhs., Dkt. 89-1 at ECF 17), there is no evidence that Ms. Sosa's students or co-workers knew what the content of the hand-delivered letter was. Thus, no jury could reasonably conclude that this manner of delivery would have been humiliating, or that it would have "dissuade[d] a reasonable worker in the plaintiff's position from exercising . . . [her] legal rights." *Lawson*, 710 F. App'x at 463 (quoting *Metro-North R.R. Co.*, 658 F.3d at 164).

7

Next, Ms. Sosa argues that the contents of the letters themselves was false. (Pl. Opp., Dkt. 89 at ECF 2–3.) Importantly, however, she does not provide any *evidence* for this proposition. (*See generally* Pl. Opp., Dkts. 89 & 89-1.) Defendants, on the other hand, provide evidence supporting the veracity of the factual contents of the letters. (Defs. Mot., Dkt. 94 at 6; *see also* Def. 56.1, Dkt. 93 ¶¶ 23-35.) More importantly, as Defendants correctly point out, the accuracy of the allegations in the letters is immaterial because "false accusations" in disciplinary write-ups, "without more, [are not] cognizable retaliatory adverse employment action[s]." *Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437 (GBD), 2016 WL 1126530, at *12 (S.D.N.Y. Mar. 18, 2016) (citing *Cody v. Cnty. of Nassau,* 345 F. App'x 717, 719 (2d Cir. 2009)).

Ms. Sosa's argument about a comparator being treated more favorably than she was with respect to discipline[8] is unavailing, first, because the alleged inaccuracies in Ms. Sosa's disciplinary letters do not constitute an adverse action, and second, because Ms. Sosa does not provide enough evidence about the proposed comparator and her alleged misconduct to create a genuine question of material fact. For example, Ms. Sosa offers no information or evidence about the would-be comparator's prior disciplinary record or lack thereof, which might be relevant to the different level of discipline that Ms. Sosa and the comparator allegedly received. *See Butts v. N.Y.C. Dep't of Educ.*, No. 16-CV-5504 (NGG) (RML), 2018 WL 4725263, at *10 (E.D.N.Y. Sept. 28, 2018) (finding plaintiff could not "create an inference of discriminatory intent," where plaintiff alleged a comparator in the same role was treated more favorably but failed to provide the

---

[8] Ms. Sosa claims that another teacher received only a counseling memo for engaging in the same conduct that resulted in Ms. Sosa receiving a disciplinary letter. (Pl. Opp., Dkt. 89 at ECF 3–4). Both teachers were written up for yelling in the cafeteria. (Pl.'s Exhs., Dkt. 89-1 at ECF 8 20–21.)

8

"evaluation and discipline standards" applicable to the comparator).[9] Thus, there is insufficient evidence from which a jury could determine whether the proposed comparator is situated sufficiently similarly to Ms. Sosa as to be an appropriate comparator.

Second, the accommodation request. Ms. Sosa's argument with respect to the accommodation request stems from an initial request made and partially granted *before* she filed her CCHR charge, and then renewed to the same extent *after* January 2017. (*See* Pl. Opp., Dkt. 89 at ECF 4 (discussing the 2016-2017 school year, and citing exhibits dated 2016-2018); Defs. 56.1, Dkt. 93 ¶ 48; *compare* 2016 Accommodation Records, Dkt. 92-23 *with* 2017 Accommodation Records, Dkt. 92-24.) As the Court previously held, the only adverse actions that remain relevant to the case are those that took place *after* the filing of Ms. Sosa's CCHR charge in January 2017. (M&O, Dkt. 41 at 20.) Thus, Defendants' post-January 2017 renewal of the pre-January 2017 partial grant of Ms. Sosa's accommodation request cannot constitute a retaliatory adverse action as this renewal was "a continuation of the status quo." *Pinero v. Long Is. State Veterans Home,* 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005). And Ms. Sosa has not offered any evidence to the contrary.

Third, the denial of a co-teacher. Ms. Sosa argues that Defendants retaliated against her by denying her a co-teacher for the 2017–2018 school year. (Pl. Opp., Dkt. 89 at 4.) Defendants assert that Ms. Sosa ultimately did receive a co-teacher for the 2017–2018 school year once her

---

[9] In her written opposition, Ms. Sosa did not identify the race, disability status, or position of the comparator, but at oral argument, Ms. Sosa asserted that the comparator is a white, non-disabled, female teacher. However, as previously mentioned, the Court cannot consider such factual allegations for which there is no evidence in the record. In any event, Ms. Sosa still has not provided sufficient information or evidence to show that the conduct that the comparator engaged in was comparable in severity to Ms. Sosa's and, as discussed above, whether the comparator had been the subject of any prior disciplinary actions before receiving the counseling letter.

"desire for a co-teacher became clear," and that any delay was "merely the result of a miscommunication" about whether Ms. Sosa wanted a co-teacher in the first place. (Def. Mot., Dkt. 94 at 9; Berman Dep., Dkt. 92-7 at 83:7–9.) Given that the situation was ultimately resolved and regardless of the underlying reason, the initial denial and delay in assigning Ms. Sosa a co-teacher does not constitute an adverse action, as this type of short-term issue would not be "likely to dissuade a reasonable worker in the plaintiff's position from exercising . . . legal rights." *Lawson*, 710 F. App'x at 463 (quoting *Metro-North R.R. Co.*, 658 F.3d at 164). Moreover, even if this were an adverse action, Defendants offer a legitimate business reason for their actions—namely, that they were unaware that Ms. Sosa wanted a co-teacher. (Berman Dep., Dkt. 92-7, at 83:7–9). Once Defendants learned that Ms. Sosa did in fact desire a co-teacher, they rectified the issue. (*Id.*) Ms. Sosa does not offer any evidence to contradict or rebut Defendants' explanation, or to create a genuine dispute as to this fact. (*See generally* Pl.'s Exhs., Dkt. 89-1.)

Fourth, the bathroom policy. Ms. Sosa argues that a change in bathroom policy at the February 2017 staff meeting constituted an adverse employment action. She alleges that the new bathroom policy—which permitted only regular teachers, not teaching assistants, to cover a teacher's class while the teacher went to the bathroom—uniquely impacted her due to her medical need to use the bathroom frequently. (Pl. Opp., Dkt. 89 at ECF 5; Pl. Dep., Dkt. 92-1 at 35:7–36:17.) Defendants, on the other hand, allege that the bathroom policy did not change at all. (Defs. Mot., Dkt. 94 at 5.) Specifically, Defendants allege that at the February 2017 staff meeting, they merely reiterated their existing bathroom policy. (*Id.*) If a jury were to believe Ms. Sosa's version of events—*i.e.*, that the bathroom policy discussed at the February 2017 meeting was new and that it uniquely affected her as compared to all other staff—it could find that the change in bathroom policy was "likely to dissuade a reasonable worker in the plaintiff's position from exercising . . .

10

legal rights." *Lawson,* 710 F. App'x at 463 (quoting *Metro-North R.R. Co.*, 658 F.3d at 164). And, given the close temporal nexus between Defendants' receipt of Ms. Sosa's CCHR charge in late January 2017 and the February 13, 2017 staff meeting, there is a question of material fact as to whether Ms. Sosa's filing of the CCHR charge motivated the Defendants' adverse action. *See Andalex,* 737 F.3d at 845 (holding that a "three-week period" between the receipt of a complaint and an adverse action is "sufficiently short to make a prima facie showing of causation indirectly through temporal proximity.").[10]

Defendants rebut Ms. Sosa's prima facie case by asserting that the policy was necessary for student safety. (Defs. 56.1, Dkt. 93 ¶ 18.) In support of this assertion, Defendants explain that the policy applied to all teachers at PS213, not just Ms. Sosa. (*Id.* ¶ 17.) Ms. Sosa has failed to offer any evidence that would cast doubt on Defendants' proffered explanation for the alleged change in bathroom policy. (*See generally* Pl. Opp., Dkts. 89 & 89-1.) Indeed, her only argument as to why a jury could find this explanation to be pretext is that once, after the policy was implemented, another teacher did not follow it.[11] (Pl. Opp., Dkt. 89 at ECF 6.) That argument, however, does not go to the veracity of Defendants' motivation in implementing the policy in question. Because Ms. Sosa is unable to rebut Defendants' proffered non-retaliatory reason for the purported change in policy, she would not prevail at trial on these claims. Consequently, her ADA and NYSHRL retaliation claims must be dismissed.

---

[10] The Court gives Ms. Sosa the benefit of the doubt with respect to the possibility that she could establish a prima facie case at trial, since she offers no evidence to establish either that the bathroom policy was new, *i.e.*, post-dated January 2017, or that the policy uniquely affected Ms. Sosa vis-à-vis her co-workers.

[11] At oral argument, Ms. Sosa claimed that this teacher, who allegedly had agreed to cover for Ms. Sosa while Ms. Sosa went to bathroom during an instructional period, was not disciplined for violating the bathroom policy. Ms. Sosa, however, offers no evidence to support this claim other that her own hearsay account.

11

## II. Plaintiff's NYCHRL Retaliation Claim

### A. Legal Standard

The *McDonnell Douglas* burden-shifting framework also applies to NYCHRL retaliation claims. *Dillon v. Ned Mgmt., Inc.,* 85 F. Supp. 3d 639, 661 (E.D.N.Y. 2015). However, unlike NYSHRL and ADA claims, claims brought under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013) (quoting *Albunio v. City of N.Y.,* 947 N.E.2d 135, 137–38 (N.Y. 2011)). "To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik,* 715 F.3d at 112 (internal citations omitted). That said, "summary judgment is still appropriate in NYCHRL cases, but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Id.* at 113.

### B. Analysis

Though Ms. Sosa's NYCHRL retaliation claim is subject to a lower standard than her other claims, she still fails to raise a question of material fact such that a jury could rule in her favor. *Mihalik,* 715 F.3d at 113. The parties' arguments with respect to the NYCHRL are the same as those made with respect to the other claims. (*See generally* Pl. Opp., Dkt. 89; Defs. Mot., Dkt. 94.) Ultimately, the NYCHRL's lower standard cannot rescue Ms. Sosa's claims from the overall lack of evidence supporting those claims. For example, with respect to the disciplinary letters, Ms. Sosa's exhibits show that she received the disciplinary letters, but they do nothing to refute Defendants' evidence that the allegations of misconduct within the letters are true. (*Compare* Pl.

Opp., Dkt. 89-1, at ECF 8-15 (disciplinary letters) *with* Def. 56.1, Dkt. 93 ¶¶ 21-35 (buttressing, with record cites, the veracity of the allegations contained in the February 17 and April 21 disciplinary letters) *and* Def. Ex. N, Dkt. 92-14 (exhibit supporting the veracity of the misconduct allegations contained in the March 15 disciplinary letter).) Consequently, the above analysis applies with equal force to Ms. Sosa's NYCHRL claim, which must be dismissed. *See Mihalik*, 715 F3d at 113 (requiring dismissal of NYCHRL claims where "a reasonable jury could not find the employer liable under any theory.").

## CONCLUSION

While the Court is sympathetic to Ms. Sosa's distress with respect to her employment situation, the Court must rule based on the record before it. For the reasons described above, the Court grants Defendants' Motion for Summary Judgment in its entirety. This case is dismissed with prejudice. The Clerk of the Court is respectfully requested to terminate this matter.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 22, 2024
      Brooklyn, New York